1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8
9

| | |
|---|---|
| AMARDEEP SEMBHI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JUNO THERAPEUTICS, INC., HAL BARRON, HANS BISHOP, THOMAS DANIEL, ANTHONY EVNIN, JAY FLATLEY, RICHARD KLAUSNER, ROBERT NELSEN, HOWARD PIEN, RUPERT VESSEY, MARY AGNES WILDEROTTER, CELGENE CORPORATION, and BLUE MAGPIE CORPORATION<br><br>Defendants. | Case No. 2:18-00229<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Amardeep Sembhi ("Plaintiff"), by her attorneys, on behalf of herself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of herself and all other public stockholders of Juno Pharmaceuticals, Inc. ("Juno" or the "Company"), against Juno, and the Company's Board of Directors (the "Board" or the "Individual Defendants")(collectively

CLASS ACTION COMPLAINT - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   with the Company, the "Defendants"), for violations of Sections 14(d), 14(e) and 20(a) of the

2   Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as

3   a result of Defendants' efforts to sell the Company to Celgene Corporation ("Parent") and Blue

4   Magpie Corporation (the "Merger Sub" and collectively with Parent, "Celgene") as a result of an

5   unfair process for an unfair price, and to enjoin a tender offer in which Celgene will acquire each

6   outstanding share of Juno common stock for $87.00 per share in cash, with a total valuation of

7   approximately $9 billion (the "Proposed Transaction").

8          2.      The terms of the Proposed Transaction were memorialized in a January 22, 2018,

9   filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the

10  definitive Agreement and Plan of Merger (the "Merger Agreement").

11         3.      Thereafter, on January 16, 2018, Juno filed a Solicitation/Recommendation

12  Statement on February 2, 2018 (the "14D-9") with the Securities and Exchange Commission (the

13  "SEC") in support of the Proposed Transaction.

14         4.      The Proposed Transaction is unfair and undervalued for a number of reasons.

15  Significantly, the 14D-9 describes an insufficient sales process sin which Celgene, already owner

16  of 9.7% of all outstanding Juno stock, was shown significant favoritism by the Board. Indeed,

17  the Juno Board was dominated by three directors closely aligned with, or employed by, Celgene.

18         5.      Juno's stock ownership emanates initially from a June 2015 announcement of a

19  10-year collaboration between Juno and Celgene for the development and commercialization of

20  immunotherapies.

21         6.      In fact, only one interested third party was even given an opportunity to be part of

22  the sales process, and no public outreach or market check was undertaken at any point.   In

23  addition to this blatant bias, as the Merger Agreement requires only 50% of all outstanding stock

24  to be tendered in favor of the Proposed Transaction to meet the minimum requirements to

25  consummate the transaction, Celgene's ownership of nearly 10% of the Company and the fact

26  that Defendants Daniels, Vessey and Nelson are so closely aligned with Celgene, will

27

28

CLASS ACTION COMPLAINT - 2

significantly reduce the amount of shares required to be tendered in favor of the Proposed Transaction to result in its consummation.

7.       Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits while the Company's stockholders are cashed out at an unfair price.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange large, illiquid blocks of Company stock for massive payouts, in addition to receiving cash in exchange for all outstanding and unvested options and/or other types of restricted stock units.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8.       Of significant note, Defendant Hans E. Bishop will receive more than *$205 million* in cash pursuant to the terms of the Proposed Transaction.  Additionally, funds associated with Arch Venture Partners VII, L.P. ("Arch"), through Director Defendant Robert Nelsen, managing director of Arch, will receive *over $922 million* in cash for its currently illiquid block of Juno stock. In sum, the directors and officers of Juno will extract nearly *$1.3 Billion* in cash for themselves or private equity funds they represent at the close of the Proposed Transaction, representing *approximately 13% of the total value* of the Proposed Transaction. Such a large payday has clearly tainted the motivations of the Board in approving the Proposed Transaction.

9.       Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Juno and is the result of a flawed sales process.   Post-closure, Juno stockholders will be frozen out of seeing the return on their investment of any and all future profitability of Juno.

10.      Finally, in violation of sections 14(d), 14(e) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties,

CLASS ACTION COMPLAINT - 3

Defendants caused to be filed the materially deficient 14D-9 on February 2, 2018 with the United States Securities and Exchange Commission ("SEC") in an effort to solicit stockholders to tender their Juno shares in favor of the Proposed Transaction.  The 14D-9 is materially deficient and deprives Juno stockholders of the information they need to make an intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.  As detailed below, the 14D-9 omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) Company's financial projections; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Morgan Stanley & Co., LLC ("Morgan Stanley").

11.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

**PARTIES**

12.     Plaintiff is a citizen of the State of California and, at all times relevant hereto, has been a Juno stockholder.

13.     Defendant Juno is a biopharmaceutical company, focuses on developing cell-based cancer immunotherapies.  Juno is a Delaware corporation with its principal executive offices located at 400 Dexter Avenue North, Suite 1200, Seattle, WA 98109.  Shares of Juno common stock are traded on the NasdaqGS under the symbol "JUNO."

14.     Defendant Hal Barron ("Barron") has been a Director of the Company at all relevant times.  In addition, Barron serves as a member on the Board's Nominating and Governance Committee.

15.     Defendant Hans Bishop ("Bishop") has been a director of the Company at all relevant times.  In addition, Bishop is a Company co-founder and has served as the Company's

CLASS ACTION COMPLAINT - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

President and Chief Executive Officer ("CEO") since its inception.  Bishop will receive more than *$205 million* in cash pursuant to the terms of the Proposed Transaction.

16.     Defendant Thomas Daniel ("Daniel") has been a director of the Company at all relevant times.   From August 2015 to June 2016, Daniel served as Celgene's appointed representative on the Juno Board.  Daniel served as Celgene's chairman of Celgene research from January 2016 until June 2016, and was previously Celgene's president, research and early development from December 2006 to January 2016 and executive vice president and president, research and early development from February 2012 until July 2014.

17.     Defendant Anthony Evnin ("Evnin") has been a director of the Company at all relevant times.   In addition, Evnin serves as the Chair of the Board's Nominating and Governance Committee and as a member on the Board's Audit Committee.

18.     Defendant Jay Flatley ("Flatley") has been a director of the Company at all relevant times.  In addition, Flatley serves as a member on the Board's Audit Committee.

19.     Defendant Richard Klausner ("Klauser") has been a director of the Company at all relevant times.  In addition, Klausner is a Company co-founder.

20.     Defendant Robert Nelsen ("Nelsen") has been a director of the Company at all relevant times.   In addition, Nelsen is a Company co-founder and serves as a member on the Board's Compensation Committee.  Defendant Nelsen is a cofounder and managing director of ARCH Venture Partners ("Arch").  Arch is a venture capital firm that invests in the development of seed and early stage advanced technology companies. Defendant Nelsen has played a significant role in the early sourcing, financing, and development of more than thirty companies, including Juno. Arch participated in Juno's initial $176 million Series A Financing round in April 2014 and again in Juno's $134 million Series B Financing round in August 2014. As of March 31, 2017, Arch owned over 10.5 million shares, or 10%, of Juno's outstanding common stock.

21.     Defendant Howard Pien ("Pien") has been a director of the Company at all relevant times.   In addition, Pien serves as the Chairman of the Board of Directors, and as the Chair of the Board's Compensation Committee.

CLASS ACTION COMPLAINT - 5

22.     Defendant Rupert Vessey ("Vessey") has been a director of the Company at all relevant times.   In 2016, Vessey replaced Defendant Daniel as Celgene's designated representative to the Juno Board (Daniel, hoever, continues to serve on the Juno Board). Vessey serves as Celgene's President of Research and Early Development.  Vessey has also held the role of Senior Vice President, translational development at Celgene, since 2015.

23.     Defendant Mary Agnes Wilderotter ("Wilderotter") has been a director of the Company at all relevant times.  In addition, Wilderotter serves as the Chair of the Company's Audit Committee and as a member of the Board's Nominating and Governance Committee. Wilderotter is also designated as a "financial expert" by the Company.

24.     Defendants Barron, Bishop, Daniel, Evnin, Flately, Klausner, Nelsen, Pien, Vessey, and Wilderotter identified in ¶¶ 12 - 21 are collectively referred to as the "Individual Defendants."

25.     Parent is a biopharmaceutical corporation that discovers, develops, and commercializes therapies to treat cancer and inflammatory diseases worldwide.  Parent is a Delaware corporation with its principal executive offices located at 86 Morris Avenue, Summit, NJ 07901.  Parent common stock is traded on the NasdaqGS under the ticker symbol "CELG."

26.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent, and can be served care of its agent for service of process, The Corporation Service Company, at 251 Little Falls Drive, Wilmington, DE 19808.

**JURISDICTION AND VENUE**

27.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

28.     Personal jurisdiction exists over each defendant either because the defendant

CLASS ACTION COMPLAINT - 6

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

29.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Juno has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

**CLASS ACTION ALLEGATIONS**

30.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Juno common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

31.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of October 30, 2017, there were more than 114 million common shares of Juno stock outstanding.  The actual number of public stockholders of Juno will be ascertained through discovery;

b.    There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.    Whether Defendants have violated the federal securities laws;

ii.    Whether Defendants made material misrepresentations and/or omitted material facts in the 14D-9; and

iii.    Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

CLASS ACTION COMPLAINT - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

32.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Juno and owe the Company the duties of due care, loyalty, and good faith.

33.  By virtue of their positions as directors and/or officers of Juno, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Juno to engage in the practices complained of herein.

34.  Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

CLASS ACTION COMPLAINT - 8

     a.  act with the requisite diligence and due care that is reasonable under the circumstances;

     b.  act in the best interest of the company;

     c.  use reasonable means to obtain material information relating to a given action or decision;

     d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

     e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

     f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

35.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Juno, are obligated to refrain from:

     a.    participating in any transaction where the directors' or officers' loyalties are divided;

     b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

     c.    unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

CLASS ACTION COMPLAINT - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

36.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Juno, Plaintiff and the other public stockholders of Juno, including their duties of loyalty, good faith, and due care.

37.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Juno common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

38.     Founded in 2013, Juno is a biopharmaceutical company that engages in developing cell-based cancer immunotherapies.

39.     The Company develops cell-based cancer immunotherapies based on its chimeric antigen receptor and T cell receptor technologies to genetically engineer T cells to recognize and kill cancer cells.  Its CD19 product candidates include JCAR017 that is in Phase I/II trials for adults with relapsed or refractory (r/r) B cell aggressive non-Hodgkin lymphoma (NHL) and pediatric patients with r/r B cell acute lymphoblastic leukemia (ALL); JCAR014, which is in Phase I/II trials to treat various B cell malignancies in patients relapsed or refractory to standard therapies; and JCAR015 that is in Phase II trials for adult patients with r/r ALL.

40.     The Company's CD22 product candidate comprise JCAR018, which is in Phase I trial for pediatric and young adult patients with CD22-positive r/r ALL or r/r NHL.

41.     Juno's additional product candidates include CD171, a cell-surface adhesion molecule to treat neuroblastoma; Lewis Y for the treatment of lung cancer; JCAR023, which is in Phase I trial for patients with refractory or recurrent pediatric neuroblastoma; MUC-16, a protein for treating ovarian cancers; IL-12, a cytokine to overcome the inhibitory effects; ROR-1, a protein for the treatment of non-small cell lung, triple negative breast, pancreatic, and prostate cancers; WT-1, an intracellular protein that is in Phase I/II clinical trials to treat adult myeloid

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

leukemia and non-small cell lung, breast, pancreatic, ovarian, and colorectal cancers; and IL13ra2 for treating glioblastoma.

42.     Notably, Juno Therapeutics, Inc. has several collaboration agreements with various third-party companies, including Celgene.

43.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in November 1, 2017, press release announcing its 2017 Q3 financial results, the Company noted such highlights as an increase in the Company's cash, cash equivalents, and marketable securities of approximately $200 million dollars from the previous quarter. Additionally, the Company experienced a significant revenue increase, with an increase in revenue from $20.8 million to $44.8 million year on year for the quarter.

44.     In addition to these positive financial results, the Company also experienced positive and meaningful progress in clinical developments of its products.  For example, Defendant and Company CEO Bishop noted that "The clinical data continue to support our belief that a defined cell product can improve patient outcomes.  Our broad clinical development programs and ongoing infrastructure and manufacturing investments remain a key part of our strategy to deliver on the potential of CAR T cell therapies for cancer patients across a broad array of diseases."

45.     These positive financial results are not an anomaly, but rather, are indicative of a trend of continued financial success by Juno.  Looking further back, one can see evidence for this typical success.  For example, in an August 3, 2017 press release announcing the Company's 2017 Q2 financial results, Juno reported a strong cash position of $801.8 million.

46.     In addition, these results also reported very positive clinical trial results, with Defendant Bishop stating, "It has been a historic last several months for the CAR T field, highlighting the potential of these therapies for patients.  Juno is well-positioned to make a major impact, particularly with the potential best-in-class profile emerging for JCAR017."

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

47.   For example, as noted in the Company's December 11, 2017 press release announcing progress with the JCAR017 drug trials, Juno reported such positive strides in research and development as the following:

a.  At DL2, the data showed a 3 month overall response rate (ORR) of 74% (14/19) and a 3 month complete response (CR) rate of 68% (13/19). Of patients that have reached 6 months of follow-up, 50% (7/14) were in CR. Across doses, 80% (16/20) of patients with CR at 3 months stayed in CR at 6 months, and 92% (11/12) of patients in response at 6 months remain in response as of data cutoff; and

b.  Across doses, median duration of response (DOR) was 9.2 months and median durability of CR was not reached

48.   Speaking on these results, Sunil Agarwal, Juno's President of Research and Development, stated, "We are highly encouraged by the latest efficacy and tolerability data, particularly at dose level two, as these are patients with a poor prognosis who need better treatment options."  Agarwal went on to describe the positive outlook for JCAR017 in future drug trials stating, "These data support a potential best-in-class profile and further support the importance of a defined cell product.  We continue to enroll our pivotal cohort in DLBCL patients and over the next twelve to eighteen months we intend to explore earlier lines of therapy, additional therapeutic areas, and combinations."

49.   Clearly, based upon these positive test results for JCAR017, the Company is likely to have tremendous future success with products currently under research and development.  While this will likely result in large returns on investment for Celgene, the freezing out of Plaintiff and other public Juno stockholders by the consummation of the Proposed Acquisition will lead to them not being able to share in the profits of their sound investment.

50.   Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Juno to enter into the Proposed Transaction, thereby

CLASS ACTION COMPLAINT - 12

1   depriving Plaintiff and other public stockholders of the Company the opportunity to reap the

2   benefits of Juno's present and future success

3   ***The Flawed Sales Process***

4          51.    The process deployed by the Individual Defendants was flawed and inadequate,

5   and conducted out of the self-interest of the Individual Defendants, and seems to have been

6   designed solely to effectuate a quick transaction for Celgene's benefit.  Of particular note, the

7   Company did not even make a cursory attempt at a market check for potentially interested third

8   parties at any point during the sales process (or the time leading up to it).

9          52.    Most notably, the sales process conducted by the Company was non-existent at

10  the time of discussions between Celgene and the Company.  Specifically, the Board of Directors

11  determined that no market outreach was necessary.  In fact, the only other potentially interested

12  third party that was contacted ("Party A") was an afterthought; the Company was in pre-existing

13  negotiations with Party A regarding a collaboration with Juno relating to Juno's BCMA program.

14  The 14D-9 fails to disclose why the Board refused to conduct an additional market check for

15  potentially interested third parties during the sales process.

16         53.    Furthermore, the 14D-9 fails to disclose why, when the *Wall Street Journal*

17  published an article on January 16, 2018, reporting that Celgene was in talks to buy Juno, the

18  Company did not undertake any additional market outreach programs at that time, given that the

19  information was made public and would have little effect with regards to a potential deal with

20  Celgene.

21         54.    The 14D-9 is also silent as to the specific reasoning for Party A's withdrawal

22  from the sales process.

23         55.    The 14D-9 is unclear as to whether or not the Board, at its September 14, 2017,

24  meeting had discussed that Celgene specifically would consider Juno a potential acquisition

25  target, and if so, why Celgene was given preferential treatment in the September 21, 2017

26  follow-on public offering of Juno Common stock that allowed Celgene and its subsidiaries to

27  purchase approximately 9.76% of Juno's outstanding stock in a private placement exempt from

28

CLASS ACTION COMPLAINT - 13

1  the registration requirements of the Securities Act of 1933, at a sale price equal to the price of the

2  public in the public offering.

3          56.      The 14D-9 is unclear as to what directors constituted the "compensation

4  subcommittee of the Strategic Committee" that met on January 4, 2018, or the specific powers

5  vested in it.

6          57.      The 14D-9 is unclear as to why the "compensation subcommittee of the Strategic

7  Committee" discussed bonuses and other form of director and executive compensation and

8  equity at such an early point in the sales process, before the price per share was finalized with

9  Celgene.

10         58.      The 14D-9 is also unclear as to the specific nature of confidentiality agreements

11  entered into between Juno on the one hand and Celgene on the other, if said confidentiality

12  agreement contained a "don't-ask, don't-waive" provision, the specific conditions, if any, such

13  provisions would fall away, and the specific nature of the changes made to it during the January

14  21, 2018 modification.

15  ***The Proposed Transaction***

16         59.      On January 28, 2018, Juno and Celgene issued a press release announcing the

17  Proposed Transaction.  The press release stated, in relevant part:

18         **SUMMIT, NJ and SEATTLE, WA – (January 22, 2018)** – Celgene
          Corporation (NASDAQ: CELG) and Juno Therapeutics, Inc. (NASDAQ: JUNO)
19         today announced the signing of a definitive merger agreement in which Celgene
          has agreed to acquire Juno.  Under the terms of the merger agreement, Celgene
20         will pay $87 per share in cash, or a total of approximately $9 billion, net of cash
          and marketable securities acquired and Juno shares already owned by Celgene
21         (approximately 9.7% of outstanding shares). The transaction was approved by the
          boards of directors of both companies.
22

23         Juno is a pioneer in the development of CAR (chimeric antigen receptor) T and
          TCR (T cell receptor) therapeutics with a broad, novel portfolio evaluating
24         multiple targets and cancer indications. Adding to Celgene's lymphoma program,
          JCAR017 (lisocabtagene maraleucel; liso-cel) represents a potentially best-in-
25         class CD19-directed CAR T currently in a pivotal program for relapsed and/or
          refractory diffuse large B-cell lymphoma (DLBCL). Regulatory approval for
26         JCAR017 in the U.S. is expected in 2019 with potential global peak sales of
          approximately $3 billion.
27

28
    CLASS ACTION COMPLAINT - 14

"The acquisition of Juno builds on our shared vision to discover and develop transformative medicines for patients with incurable blood cancers," said Mark J. Alles, Celgene's Chief Executive Officer. "Juno's advanced cellular immunotherapy portfolio and research capabilities strengthen Celgene's global leadership in hematology and adds new drivers for growth beyond 2020."

"The people at Juno channel their passion for science and patients towards a common goal of finding cures by creating cell therapies that help people live longer, better lives," said Hans Bishop, Juno's President and Chief Executive Officer. "Continuing this work will take scientific prowess, manufacturing excellence and global reach. This union will provide all three."

The acquisition will also add a novel scientific platform and scalable manufacturing capabilities which will complement Celgene's leadership in hematology and oncology. In collaboration with Juno's team in Seattle, Celgene plans to expand its existing center of excellence for immuno-oncology translational medicine by leveraging Juno's research and development facility in Seattle, WA as well as Juno's manufacturing facility in Bothell, WA.

**Strategic Rationale for Acquiring Juno**

Upon completion of the acquisition of Juno, Celgene will be positioned to become a preeminent cellular immunotherapy company. The strategic advantages of this acquisition will include the opportunity to:

- Leverage a novel scientific platform and scalable manufacturing capabilities to position Celgene at the forefront of future advances in the science of cellular immunotherapy

- Accelerate Juno's pipeline development to capture the full potential of cellular immunotherapy

  - JCAR017, a pivotal stage asset, with an emerging favorable profile in DLBCL, is expected to add approximately $3 billion in peak sales and significantly strengthen Celgene's lymphoma portfolio

  - JCARH125 will enhance Celgene's campaign against BCMA (B-cell maturation antigen), a key target in multiple myeloma

  - Additional cellular therapy assets in proof-of-concept trials for hematologic malignancies and solid tumors will add to Celgene's existing pipeline

- Accelerate revenue diversification with meaningful growth drivers beyond 2020

CLASS ACTION COMPLAINT - 15

• Capture 100% of the global economics on all Juno's cellular immunotherapy assets

**Terms of the Agreement**

Celgene will acquire all the outstanding shares of common stock of Juno through a tender offer for $87 per share in cash, or an aggregate of approximately $9 billion, net of cash and marketable securities acquired and Juno shares already owned by Celgene. The transaction has been approved by the boards of directors of both companies and is subject to customary closing conditions, including the tender of a number of shares of Juno common stock, that when taken together with the shares of Juno common stock already directly and indirectly owned by Celgene, represent at least a majority of outstanding shares of Juno common stock, and expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The transaction is anticipated to close in Q1:18.

Celgene expects to fund the transaction through a combination of existing cash and new debt. The resulting capital structure will be consistent with Celgene's historical financial strategy and strong investment grade profile providing the financial flexibility to pursue Celgene's strategic priorities and take actions to drive post 2020 growth.

The acquisition is expected to be dilutive to adjusted EPS (earnings per share) in 2018 by approximately $0.50 and is expected to be incrementally additive to net product sales in 2020. There is no change to the previously disclosed 2020 financial targets of total net product sales of $19 billion to $20 billion and adjusted EPS greater than $12.50.

J.P. Morgan Securities LLC is acting as financial advisor to Celgene on the transaction. Morgan Stanley & Co. LLC is acting as financial advisor to Juno. Legal counsel for Celgene is Proskauer Rose LLP and Hogan Lovells, and Juno's legal counsel is Skadden, Arps, Slate, Meagher and Flom, LLP.

***The Inadequate Merger Consideration***

60.     Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Celgene establish the inadequacy of the merger consideration.

61.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.   The proposed valuation does not adequately reflect the intrinsic value of the Company.   Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key revenue increases and cash positions in many of its divisions reported in the recent quarters.

CLASS ACTION COMPLAINT - 16

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

62.     This lack of premium has not gone unnoticed by those in the financial media either, with a December 26, 2017, article penned by BioSci Capital Partners on *SeekingAlpha* that commented on the market's lukewarm reaction to the Proposed Transaction.

63.     Additionally, Juno's future success is extremely likely, given the consistent increases in its total revenues, and its steady achievement of regulatory and research goals associated with its products in development.

64.     This future success has been touched on by those in the financial media, with Todd Campbell at *The Motley Fool* penning a January 24, 2018 article stating that Juno's research into "chimeric antigen receptor T-cell therapies...are considered one of the most important advances in advanced B-Cell cancer treatment today."

65.     As stated previously, the recent positive test results for drug trials relating to the Company's JCAR017 product indicate a highly promising and profitable future for Juno in the short-term future.  The Company is likely to have tremendous future success with products currently under research and development, including JCAR017.  While this will likely result in large returns on investment for Celgene, the freezing out of Plaintiff and other public Juno stockholders by the consummation of the Proposed Acquisition will lead to them not being able to share in the profits of their sound investment.

66.     Obviously, the opportunity to invest in such a company on the rise is a great coup for Celgene, however it undercuts the foresight and investment of Plaintiff and all other public stockholders who have done the same.

67.     Finally, the Proposed Transaction represents a significant synergistic benefit to Celgene, which operates in the same industry as Juno, and will use the new assets and brand capital to bolster its own position in the market.  Specifically, Mark J. Alles, CEO of Celgene noted in the press release announcing the Proposed Transaction that, "Juno's advanced cellular immunotherapy portfolio and research capabilities strengthen Celgene's global leadership in hematology and adds new drivers for growth beyond 2020."

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

68.     Additionally, those in the financial media have picked up on the acquisition, with *Canaccord Genuity's* John Newman and David Huang stating that "the acquisition gives Celgene a needed entrée into the CAR-T market, while also providing access to 'highly persistent' long-term cash flows of $3 billion from its biologics business."

69.     Clearly, while the deal will be beneficial to Celgene it comes at great expense to Plaintiff and other public stockholders of the Company.

70.     Moreover, post-closure, Juno stockholders will be completely cashed out from any and all ownership interest in the Company, forever foreclosing them from receiving any future benefit in their investment as Juno continues on its upward financial trajectory.

71.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Celgene at the expense of Juno stockholders, which clearly indicates that Juno stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

72.     The Merger Agreement contains certain provisions that unduly benefit Celgene by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that requires Juno to pay up to $300 million to Celgene if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Juno must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

73.     The Merger Agreement also contains a "No Solicitation" provision that restricts Juno from considering alternative acquisition proposals by, *inter alia*, constraining Juno's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"written Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Offer*" as defined in the Merger Agreement.

74.    Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.    Here, the Individual Defendants agreed to provide Celgene information in order to match any other offer, thus providing Celgene's access to the unsolicited bidder's financial information and giving Celgene the ability to top the superior offer.    Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Celgene.

75.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

76.    Finally, and most egregiously, Celgene owns approximately 10% of the outstanding stock of the Company and will tender such stock in favor of the Proposed Transaction.    Significantly, as the Merger Agreement requires only 50% of all outstanding stock to be tendered in favor of the Proposed Transaction to meet the minimum requirements to consummate the transaction, Celgene's 10% ownership of the Company makes it significantly more likely that deal will be locked up in favor of Celgene.

77.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Potential Conflicts of Interest*

78.    Juno insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Juno.

79.    Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for nearly *1.3 billion dollars* in cash upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares | Implied Cash Consideration for Shares |
|---|---|---|
| **Name of Executive Officer or Director** | | |
| Hans E. Bishop | 2,357,254 | $ 205,081,098 |
| Robert Azelby | — | $ — |
| Bernard J. Cassidy | 54,371 | $ 4,730,277 |
| Steven D. Harr, M.D. | 649,991 | $ 56,549,217 |
| Hyam Levitsky, M.D. | 28,446 | $ 2,474,802 |
| Howard H. Pien | 125,000 | $ 10,875,000 |
| Hal V. Barron, M.D. | 100,000 | $ 8,700,000 |
| Thomas O. Daniel, M.D. | — | $ — |
| Anthony B. Evnin, Ph.D. | 59,842 | $ 5,206,254 |
| Jay T. Flatley | 31,500 | $ 2,740,500 |
| Richard D. Klausner, M.D. | 728,775 | $ 63,403,425 |
| Robert T. Nelsen[(1)] | 10,603,214 | $ 922,479,618 |
| Rupert Vessey, BM BCh, DPhil | — | $ — |
| Mary Agnes Wilderotter | — | $ — |
| All of our current executive officers and directors as a group (15 persons)[(2)] | 14,709,947 | $ 1,279,765,389 |

80.    Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, will be canceled and converted into the right to receive from the surviving corporation cash in certain amounts.  Notably, Company insiders, including certain Individual Defendants, will receive huge payouts in cash upon the consummation of the Proposed Transaction due to the cashing out of their options.  Specifically, Defendant Bishop will receive *nearly seventy million dollars* for his stock options in Juno.  Total amounts of cash considerations for Company options is as follows:

CLASS ACTION COMPLAINT - 20

| Name | Number of Shares Underlying Vested Options | Number of Shares Underlying Unvested Options | Estimated Cash Value of Company Stock Options |
|---|---|---|---|
| **Named Executive Officers** | | | |
| Hans E. Bishop | 834,665 | 162,914 | $ 68,014,919 |
| Robert Azelby | 105,583 | 123,922 | $ 12,041,433 |
| Bernard J. Cassidy | 316,931 | 84,705 | $ 27,196,719 |
| Steven D. Harr, M.D. | 357,147 | 109,444 | $ 29,195,738 |
| Hyam Levitsky, M.D.[1] | 217,942 | 79,408 | $ 14,271,876 |
| **Other Executive Officers** | | | |
| Sunil Agarwal, M.D. | 98,064 | 215,733 | $ 19,766,073 |
| Ann L. Lee, Ph.D. | 70,080 | 82,820 | $ 3,692,535 |
| **Non-Employee Directors** | | | |
| Howard H. Pien | 36,000 | — | $ 1,623,720 |
| Hal V. Barron, M.D. | 111,000 | — | $ 7,671,720 |
| Thomas O. Daniel, M.D. | 12,000 | — | $ 764,520 |
| Anthony B. Evnin, Ph.D. | 36,000 | — | $ 1,623,720 |
| Jay T. Flatley | 30,000 | — | $ 1,897,260 |
| Richard D. Klausner, M.D. | 36,000 | — | $ 1,623,720 |
| Robert T. Nelsen | 36,000 | — | $ 1,623,720 |
| Rupert Vessey, BM BCh, DPhil | — | — | $ — |
| Mary Agnes Wilderotter | 111,000 | — | $ 7,494,720 |

81.     Additionally, upon the consummation of the Proposed Transaction, each outstanding Company restricted stock unit ("RSU"), will be canceled and converted into the right to receive from the surviving corporation cash in certain amounts.  Notably, Company insiders, including certain Individual Defendants, will receive huge payouts in cash upon the consummation of the Proposed Transaction due to the cashing out of their RSUs, as follows:

| Name | Number of Shares Underlying RSUs | Estimated Cash Value of RSUs | Number of Shares Underlying RSAs | Estimated Cash Value of RSAs |
|---|---|---|---|---|
| **Named Executive Officers** | | | | |
| Hans E. Bishop | 44,177 | $3,843,399 | 65,105 | $ 5,664,135 |
| Robert Azelby | 34,939 | $3,039,693 | — | $ — |
| Bernard J. Cassidy | 24,390 | $2,121,930 | — | $ — |
| Steven D. Harr, M.D. | 27,439 | $2,387,193 | 50,009 | $ 4,350,783 |
| Hyam Levitsky, M.D.[1] | 79,634 | $6,928,158 | — | $ — |
| **Other Executive Officers** | | | | |
| Sunil Agarwal, M.D. | 84,549 | $7,355,763 | — | $ — |
| Ann L. Lee, Ph.D. | — | $ — | 35,004 | $ 3,045,348 |
| **Non-Employee Directors** | | | | |
| Howard H. Pien | 5,050 | $ 439,350 | — | $ — |
| Hal V. Barron, M.D. | 3,780 | $ 328,860 | — | $ — |
| Thomas O. Daniel, M.D. | — | $ — | — | $ — |
| Anthony B. Evnin, Ph.D. | — | $ — | — | $ — |
| Jay T. Flatley | — | $ — | — | $ — |
| Richard D. Klausner, M.D. | — | $ — | — | $ — |
| Robert T. Nelsen | 3,234 | $ 281,358 | — | $ — |
| Rupert Vessey, BM BCh, DPhil | — | $ — | — | $ — |
| Mary Agnes Wilderotter | — | $ — | — | $ — |

CLASS ACTION COMPLAINT - 21

82.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company performance restricted stock unit ("PSU") and performance restricted shares ("PSAs"), will be canceled and converted into the right to receive from the surviving corporation cash in certain amounts.  Notably, Company insiders, including certain Individual Defendants, will receive huge payouts in cash upon the consummation of the Proposed Transaction due to the cashing out of their PSUs/PSAs, as follows:

| Name | Number of PSUs | Estimated Cash Value of PSUs | Number of PSAs | Estimated Cash Value of PSAs |
|---|---|---|---|---|
| **Named Executive Officers** | | | | |
| Hans E. Bishop | — | $ — | 35,893 | $ 3,122,691 |
| Robert Azelby | — | $ — | 35,893 | $ 3,122,691 |
| Bernard J. Cassidy | — | $ — | 35,893 | $ 3,122,691 |
| Steven D. Harr, M.D. | — | $ — | 35,893 | $ 3,122,691 |
| Hyam Levitsky, M.D.[1] | 25,860 | $ 2,249,820 | — | $ — |
| **Other Executive Officers** | | | | |
| Sunil Agarwal, M.D. | — | $ — | 35,893 | $ 3,122,691 |
| Ann L. Lee, Ph.D. | — | $ — | 35,000 | $ 3,045,000 |
| **Non-Employee Directors** | | | | |
| Howard H. Pien | — | $ — | — | $ — |
| Hal V. Barron, M.D. | — | $ — | — | $ — |
| Thomas O. Daniel, M.D. | — | $ — | — | $ — |
| Anthony B. Evnin, Ph.D. | — | $ — | — | $ — |
| Jay T. Flatley | — | $ — | — | $ — |
| Richard D. Klausner, M.D. | — | $ — | — | $ — |
| Robert T. Nelsen | — | $ — | — | $ — |
| Rupert Vessey, BM BCH, DPhil | — | $ — | — | $ — |
| Mary Agnes Wilderotter | — | $ — | — | $ — |

83.     Moreover, certain employment agreements with all Juno executives, including certain directors, are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Juno's common stockholders.

84.     Of particular note, Defendant Bishop stands to receive ***nearly fifty million dollars*** in golden parachute compensation alone.

85.     The following table sets forth the Golden Parachute compensation for certain Juno directors and officers, as well as their estimated value payable:

CLASS ACTION COMPLAINT - 22

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

| Name | Cash (1) | Equity (2) | Continued Coverage of COBRA Benefits (3) | Estimated Golden Parachute Tax Reimbursement (4) | Other | Total |
|---|---|---|---|---|---|---|
| Hans E. Bishop | $ 1,307,354 | $ 44,700,382 | $ 28,954 | $ 3,404,436 | $ — | $ 49,441,126 |
| Robert Azelby | $ 439,630 | $ 17,668,876 | $ 20,780 | $ 2,556,987 | $ — | $ 20,686,273 |
| Bernard J. Cassidy | $ 411,397 | $ 14,673,602 | $ 20,780 | $ 2,640,441 | $ — | $ 17,746,220 |
| Steven D. Harr, M.D. | $ 555,387 | $ 24,438,139 | $ 21,011 | $ 2,838,216 | $ — | $ 27,852,753 |
| Hyam Levitsky, M.D. [5] | $ 436,451 | $ 18,170,841 | $ 20,780 | $ 1,749,044 | $ — | $ 20,377,116 |

86.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

87.     Thus, while the Proposed Transaction is not in the best interests of Juno stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete 14D-9**

88.     On February 2, 2018, Juno filed with the SEC a materially misleading and incomplete 14D-9 that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

89.     Specifically, the 14D-9 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy fails to disclose:

a.     The 14D-9 fails to disclose the basis for the Board's decision to not engage in a market check at any point in the process, including after details of the discussions with Celgene were published by the press in January 2018;

b.     The 14D-9 fails to disclose the reason for Party A's withdrawal from the sales process;

c.     The 14D-9 fails to disclose the specific nature of the standstill provisions included in the confidentiality agreement entered into between Juno and

CLASS ACTION COMPLAINT - 23

Celgene, including whether the disclosed standstill provision contained a "don't-ask, don't-waive" clause, under what conditions, if any, such clause would fall away, and what specific changes were made to the confidentiality agreement on January 21, 2018;

d.  The 14D-9 is fails to disclose whether the Board, at its September 14, 2017, meeting discussed that Celgene considered Juno a potential acquisition target, and if so, why Celgene was given preferential treatment in the September 21, 2017 follow-on public offering of Juno Common stock that allowed Celgene and its subsidiaries to purchase approximately 9.76% of Juno's outstanding stock in a private placement exempt from the registration requirements of the Securities Act of 1933, at a sale price equal to the price of the public in the public offering;

e.  The 14D-9 fails to disclose why the "compensation subcommittee of the Strategic Committee" discussed bonuses and other form of director and executive compensation and equity at such an early point in the sales process, before the price per share was finalized with Celgene.

*Omissions and/or Material Misrepresentations Concerning Juno's Financial Projections*

90.    The 14D-9 fails to provide material information concerning financial projections provided by Juno's management and relied upon by Morgan Stanley in its analyses. The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed "certain information furnished to Morgan Stanley by the management of Juno relating to the businesses, operations and prospects of Juno, including probability-weighted and tax-affected financial forecasts and estimates provided by the management of Juno." Accordingly, the 14D-9 should have, but fails to provide, certain information in the projections that Juno's management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-

CLASS ACTION COMPLAINT - 24

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  prized disclosures by investors.  Investors can come up with their own estimates of discount rates

2  or [] market multiples.  What they cannot hope to do is replicate management's inside view of

3  the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203

4  (Del. Ch. 2007).

5          91.     The 14D-9 fails to provide material information concerning the financial

6  projections prepared by the Company's management.  Specifically, the 14D-9 fails to disclose

7  the material line items for the risk adjusted and non-risk adjusted base, upside, and downside

8  cases for the January 2018 and November 2017 Juno Projections discussed in the 14D-9:

9                  a.  the line items used to calculate Total Gross Profit, including

10                         i.  % margin;

11                        ii.  Research and Development Expenses ("R&D") related to the drugs

12                             JCAR017 & JCARH125;

13                       iii.  R&D Pipeline; and

14                        iv.  Selling, General and Administrative Expenses ("SG&A").

15                 b.  the line items used to calculate Earnings Before Interest & Tax ("EBIT"),

16                     including:

17                         i.  Other Income (Expenses); and

18                        ii.  Cash Taxes.

19                 c.  the line items used to calculate Net Income including Net Operating Loss

20                     ("NOL") adjustments, including:

21                         i.  Capital Expenditures ("Capex");

22                        ii.  Depreciation and Amortization; and

23                       iii.  Changes in net working capital.

24         92.     This information is necessary to provide Company stockholders a complete and

25  accurate picture of the sales process and its fairness.  Without this information, stockholders

26  were not fully informed as to Defendants' actions, including those that may have been taken in

27  bad faith, and cannot fairly assess the process.

28

CLASS ACTION COMPLAINT - 25

93.     Without accurate projection data presented in the 14D-9, Plaintiff and other stockholders of Juno are unable to properly evaluate the Company's true worth, the accuracy of Morgan Stanley's financial analyses, or make an informed decision whether to tender their Company stock in the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

94.     In the 14D-9, Morgan Stanley describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

95.     With respect to the *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose the following:

    a.   the specific inputs and assumptions used to determine the perpetuity growth rate of negative 5%;

    b.   the specific inputs and assumptions used to calculate the amount of net operating losses and other tax shield benefits that Juno's management projected would accrue and/or be utilized for the calendar years 2018 through 2035; and

    c.   the specific inputs and assumptions used to calculate the discount rate range of 13.4% to 15.4%.

96.     With respect to the *Premiums Paid Analysis*, the 14D-9 fails to disclose the following:

    a.   the transaction price for each of the listed transactions;

    b.   the lead product of the company being acquired and its stage of development;

    c.   the acquiror's stock performance over specific periods pf time; and

CLASS ACTION COMPLAINT - 26

      d.  the basis for only choosing the stock price for each transaction for the last trading day prior to the first public knowledge of the possibility of an impending transaction, as opposed to doing so over various periods of time.

97.    In addition, it appears that Morgan Stanley did not conduct a *Comparable Companies Analysis* and/or a *Comparable Precedent Transactions Analysis*, despite the fact that one of the major drivers of the sales process appeared to be the Board's discussions on September 14, 2017 regarding concerns that the recently announced acquisition of Kite Pharma, Inc. by Gilead Sciences, and subsequent media attention, could make Juno an appealing acquisition target. Given that the sales process seemingly stemmed from this concern, it must be disclosed why such valuation analyses were not conducted as they are clearly relevant to Juno stockholders to receive information comparing the Company and the Proposed Transaction to others in the same industry (including, specifically Kite Pharma., Inc., and its related transaction).

98.    Further, given the fact that a sum-of -the-parts analysis was highly relevant to the bidding process by Celgene and the values determined by Morgan Stanley were above the deal price in the base case scenario, the 14D-9 must disclose the analysis as performed by Morgan Stanley.

99.    These disclosures are critical for stockholders to be able to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

100.    Without the omitted information identified above, Juno's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Juno's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.

CLASS ACTION COMPLAINT - 27

1

**FIRST COUNT**

2

**Claim for Breach of Fiduciary Duties**

3

**(Against the Individual Defendants)**

4      101.    Plaintiff repeats all previous allegations as if set forth in full herein.

5      102.    The Individual Defendants have violated their fiduciary duties of care, loyalty and

6 good faith owed to Plaintiff and the Company's public stockholders.

7      103.    By the acts, transactions and courses of conduct alleged herein, Defendants,

8 individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff

9 and other members of the Class of the true value of their investment in Juno.

10      104.    As demonstrated by the allegations above, the Individual Defendants failed to

11 exercise the care required, and breached their duties of loyalty and good faith owed to the

12 stockholders of Juno by entering into the Proposed Transaction through a flawed and unfair

13 process and failing to take steps to maximize the value of Juno to its public stockholders.

14      105.    Indeed, Defendants have accepted an offer to sell Juno at a price that fails to

15 reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and

16 adequate value of their shares.

17      106.    Moreover, the Individual Defendants breached their duty of due care and candor

18 by failing to disclose to Plaintiff and the Class all material information necessary for them to

19 make an informed vote on whether to approve the Merger.

20      107.    The Individual Defendants dominate and control the business and corporate

21 affairs of Juno, and are in possession of private corporate information concerning Juno's assets,

22 business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and

23 economic power between them and the public stockholders of Juno which makes it inherently

24 unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

25      108.    By reason of the foregoing acts, practices and course of conduct, the Individual

26 Defendants have failed to exercise due care and diligence in the exercise of their fiduciary

27 obligations toward Plaintiff and the other members of the Class.

28

CLASS ACTION COMPLAINT - 28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

109.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Juno's assets and have been and will be prevented from obtaining a fair price for their common stock.

110.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

111.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

112.    Plaintiff repeats all previous allegations as if set forth in full herein.

113.    Defendants have disseminated the 14D-9 with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

114.    Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

115.    The 14D-9 was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the 14D-9 is materially misleading and omits material facts that are necessary to render them non-misleading.

CLASS ACTION COMPLAINT - 29

116.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

117.    The Individual Defendants were at least negligent in filing a 14D-9 that was materially misleading and/or omitted material facts necessary to make the 14D-9 not misleading.

118.    The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

119.    Plaintiff repeats all previous allegations as if set forth in full herein.

120.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the 14D-9 was materially misleading to Company stockholders.

121.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the 14D-9 and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the 14D-9.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the

CLASS ACTION COMPLAINT - 30

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

14D-9 before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

122.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Juno's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the 14D-9 was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the 14D-9 and are therefore responsible and liable for the misrepresentations contained herein.

123.     The Individual Defendants acted as controlling persons of Juno within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Juno to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Juno and all of its employees.  As alleged above, Juno is a primary violator of Section 14 of the Exchange Act and SEC Rule 14d-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining the Proposed Transaction;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

E.     Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Juno and obtain a transaction which is in the best interests of Juno and its stockholders;

F.     Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 13, 2018

**BRESKIN JOHNSON & TOWNSEND PLLC**

By:   s/ Roger Townsend
Roger Townsend, WSBA # 25525
1000 Second Avenue, Suite 3670
Seattle, Washington 98104
206-652-8660 Phone
206-652-8290 Fax
rtownsend@bjtlegal.com

**OF COUNSEL**

s/ Evan Smith
Evan J. Smith, Esquire
s/ Marc Ackerman
Marc L. Ackerman, Esquire
**BRODSKY & SMITH, LLC**
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Phone: (610) 667-6200
Facsimile: (610) 667-9029
esmith@brodskysmith.com
mackerman@brodskysmith.com
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 32